UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------

UNITED STATES UNDERWRITERS
INSURANCE COMPANY,

                    Plaintiff,

        v.

ITG DEVELOPMENT GROUP, LLC and
FREDRICK RATH,

                    Defendants.

------------------------------------------------------------

**MEMORANDUM & ORDER**
16-CV-1724 (MKB) (RER)

MARGO K. BRODIE, United States District Judge:

Plaintiff United States Underwriters Insurance Company ("U.S. Underwriters")

commenced the above-captioned action against Defendants ITG Development Group, LLC

("ITG"), and Fredrick Rath on April 8, 2016, seeking a declaratory judgment that it has no duty

to defend or indemnify ITG, or compensate Rath for claims asserted in the state court action,

*Rath v. ITG Development Group, LLC*, Index No. 22144/2011 (Sup. Ct.) (the "Rath Action"),

pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201.[1] (Compl., Docket Entry No. 1;

Am. Compl., Docket Entry No. 16.) On May 30, 2017, Plaintiff moved for summary judgment

against Rath pursuant to Rule 56 of the Federal Rules of Civil Procedure.[2] (Pl. Mot. for Summ J.

---

[1] In its submissions, Plaintiff failed to provide the legal authority for its request for a
declaratory judgment. (*See generally* Pl. Mem. in Supp. of Pl. Mot. ("Pl. Mem."), Docket Entry
No. 30-28; Pl. Reply in Supp. of Pl. Mot. ("Pl. Reply"), Docket Entry No. 31.) Magistrate Judge
Ramon E. Reyes Jr., construed Plaintiff's request as being made "presumably" pursuant to 28
U.S.C. § 2201. The Court also construes Plaintiff's request in a like manner.

[2] Defendant ITG has not appeared in this action. (*See* Clerk's Entry of Default dated
July 22, 2016, Docket Entry No. 14.)

("Pl. Mot."), Docket Entry No. 30; Pl. Mem. in Supp. of Pl. Mot. ("Pl. Mem."), Docket Entry No. 30-28.)

On August 1, 2017, the Court referred Plaintiff's motion to Judge Reyes for a report and recommendation. (Order dated Aug. 1, 2017.) By report and recommendation dated February 20, 2018, Judge Reyes recommended that the Court grant Plaintiff's motion for summary judgment ("R&R"). (R&R, Docket Entry No. 33.) On March 5, 2018, Rath filed a timely objection to the R&R. (Def. Rath Obj. to R&R ("Rath Obj."), Docket Entry No. 34.) On March 6, 2018, Plaintiff filed timely objections to the R&R, asserting that the Court should grant summary judgment on additional grounds rejected by Judge Reyes. (Pl. Letter Obj. to R&R ("Pl. Obj."), Docket Entry No. 35.)

## I. Background

### a. Factual background

Plaintiff U.S. Underwriters is an insurance company that offers commercial liability and property insurance policies. Defendant ITG is a New York corporation doing business in New York. (Compl. ¶ 2.)[3] For the period spanning August 18, 2010 through February 18, 2011, U.S. Underwriters issued ITG an insurance policy numbered CP 3552516 (the "Policy"), covering 2107 5th Avenue New York, New York 10035 (the "Premises"). (Pl. Statement of Material Facts Pursuant to Local R. 56.1 ("Pl. 56.1") ¶¶ 14, 17, Docket Entry No. 30-26.)

On October 7, 2010, Rath, while working as an independent contractor for Bellmarc Realty LLC ("Bellmarc"), fell and sustained injuries at the Premises. (Id. ¶¶ 2–3; Def. Rath Resp. to Pl. 56.1 ("Rath 56.1") ¶ 34, Docket Entry No. 32-4.) Subsequently, on September 30,

---

[3] The Court cites to the Complaint only for the purpose of providing the available background on Defendant ITG. Both parties failed to provide any other information about Defendant ITG other than its failure to appear in this action and its delayed notice to Plaintiff.

2011, Rath filed the Rath Action against ITG, alleging that ITG's "negligence in ownership, operation, maintenance, repair and control of the premises" caused his injuries. (Pl. 56.1 ¶¶ 2–3.)

Rath served ITG with the summons and complaint of the Rath Action by personal delivery at the Office of the Secretary of the State of New York on November 4, 2011.[4] (*Id.* ¶ 10.) On January 28, 2013, the Honorable Peter Sweeney issued an order granting Rath's motion for default judgment against ITG in the Rath Action. (*Id.* ¶ 11.) Consequently, on August 23, 2013, the Kings County clerk of court entered judgment against ITG in the Rath Action in the amount of $2,674,800.90. (*Id.* ¶ 13.) ITG notified U.S. Underwriters of Rath's injury and the Rath Action on March 11, 2014, over six months after the Kings County clerk of court entered a default judgment against ITG. (*Id.* ¶ 24.) As a condition precedent to coverage, the Policy required ITG to notify U.S. Underwriters "as soon as practicable" of any "'occurrence' or an offense which may result in a claim" and any "claim" or "'suit' . . . brought against [the] insured." (*Id.* ¶ 15.)

### b. The R&R

Judge Reyes recommended that the Court grant Plaintiff's motion for summary judgment because ITG's delay in providing Plaintiff notice of Rath's injury violated the terms of the Policy and prejudiced Plaintiff. (R&R 4–8.) He found the service on ITG through the Secretary of State to be sufficient notice, requiring ITG to have timely notified Plaintiff about the Rath

---

[4] The Court notes that the parties have mistakenly agreed in their respective Local Rule 56.1 filings that Rath served ITG on November 4, 2010. (Pl. Statement of Material Facts Pursuant to Local R. 56.1 ("Pl. 56.1") ¶ 10, Docket Entry No. 30-26; Def. Rath Resp. to Pl. 56.1 ("Rath 56.1") ¶ 10, Docket Entry No. 32-4.) The parties' briefing makes clear that service occurred on November 4, 2011. (*See* Pl. Mem. 2; Def. Rath Mem. in Supp. of Rath Opp'n ("Rath Mem.") 5, Docket Entry No. 32-3.)

Action.  (*Id.* at 4–6.)  In addition, Judge Reyes found the delayed notice to be prejudicial because of the length of the delay, and the resulting inability "to acquire any documentation related to the incident, or to speak with potential witnesses contemporaneous with the incident."  (*Id.* at 7.)  In granting summary judgement to Plaintiff on the basis of delay in notification and resulting prejudice, Judge Reyes also considered but dismissed Plaintiff's additional arguments based on the following four limitations of coverage in the Policy: (1) Vacancy of the Premises; (2) Construction Operations Exclusion; (3) Independent Contractor Exclusion; and (4) Bodily Injury Exclusion.  (*Id.* at 8–11.)

In addressing the "Vacancy of the Premises" and "Construction Operations Exclusion" limitations, Judge Reyes found there remained a material dispute of fact as to whether "there was construction, remodeling or renovation at the time Rath was injured," precluding summary judgment on those bases.  (*Id.* at 9, 11.)  As to the "Independent Contractor Exclusion" and "Bodily Injury Exclusion" limitations, Judge Reyes found a material dispute of fact as to whether Bellmarc and ITG formed a contractor/subcontractor relationship, precluding summary judgment on those bases.  (*Id.* at 9–10.)

## II.  Discussion

### a.  Standards of reviews

#### i.  Report and recommendation

A district court reviewing a magistrate judge's recommended ruling "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."  28 U.S.C. § 636(b)(1)(C).  When a party submits a timely objection to a report and recommendation, the district court reviews *de novo* the parts of the report and recommendation to which the party objected.  *Id.*; *see also United States v. Romano*, 794 F.3d 317, 340 (2d Cir.

2015). The district court may adopt those portions of the recommended ruling to which no timely objections have been made, provided no clear error is apparent from the face of the record. *John Hancock Life Ins. Co. v. Neuman*, No. 15-CV-1358, 2015 WL 7459920, at *1 (E.D.N.Y. Nov. 24, 2015). The clear error standard also applies when a party makes only conclusory or general objections. *Benitez v. Parmer*, 654 F. App'x 502, 503–04 (2d Cir. 2016) (holding "general objection[s] [to be] insufficient to obtain *de novo* review by [a] district court" (citations omitted)); Fed. R. Civ. P. 72(b)(2) ("[A] party may serve and file *specific* written objections to the [magistrate judge's] proposed findings and recommendations." (emphasis added)); *see also Mario v. P & C Food Mkts., Inc.*, 313 F.3d 758, 766 (2d Cir. 2002) ("Merely referring the court to previously filed papers or arguments does not constitute an adequate objection under . . . Fed. R. Civ. P. 72(b)").

### ii. Summary judgment

Summary judgment is proper only when, construing the evidence in the light most favorable to the non-movant, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Wandering Dago, Inc. v. Destito*, 879 F.3d 20, 30 (2d Cir. 2018); *see also Cortes v. MTA NYC Transit*, 802 F.3d 226, 230 (2d Cir. 2015). The role of the court "is not to resolve disputed questions of fact but only to determine whether, as to any material issue, a genuine factual dispute exists." *Rogoz v. City of Hartford*, 796 F.3d 236, 245 (2d Cir. 2015) (first quoting *Kaytor v. Elec. Boat Corp.*, 609 F.3d 537, 545 (2d Cir. 2010); and then citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986)). A genuine issue of fact exists when there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252. The "mere existence of a scintilla of evidence" is not sufficient to defeat summary judgment. *Id.* The court's function is

to decide "whether, after resolving all ambiguities and drawing all inferences in favor of the nonmoving party, a rational juror could find in favor of that party." *Pinto v. Allstate Ins. Co.*, 221 F.3d 394, 398 (2d Cir. 2000).

### iii. Declaratory judgment

The Declaratory Judgment Act provides, in pertinent part, that "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). For the purposes of the Declaratory Judgment Act, "actual controversy" means "whether the facts alleged, under all the circumstances, show that there is a substantial controversy between parties having adverse legal interests, or sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Golden v. Zwickler*, 394 U.S. 103, 108 (1969) (quoting *Maryland Casualty Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941)); *see also Nike, Inc. v. Already, LLC*, 663 F.3d 89, 95 (2d Cir. 2011). "'[A] mere demand for declaratory relief does not by itself establish a case or controversy necessary to confer subject matter jurisdiction . . . .' '[Rather,] [w]here the remedy sought is a mere declaration of law without implications for practical enforcement upon the parties, the case is properly dismissed.'" *Mitskovski v. Buffalo & Fort Erie Pub. Bridge Auth.*, 415 F. App'x 264, 267 (2d Cir. 2011) (quoting *S. Jackson & Son, Inc. v. Coffee, Sugar & Cocoa Exch. Inc.*, 24 F.3d 427, 431 (2d Cir. 1994)).

Federal courts have "unique and substantial discretion in deciding whether to declare the rights of litigants" under the Declaratory Judgment Act. *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995); *Mariah Re Ltd. v. Am. Family Mut. Ins. Co.*, 52 F. Supp. 3d 601, 623 (S.D.N.Y.

2014); *see also Dow Jones & Co., Inc. v. Harrods Ltd.*, 346 F.3d 357, 359 (2d Cir. 2003)

("Courts have consistently interpreted [the Declaratory Judgment Act's] permissive language as

a broad grant of discretion to district courts to refuse to exercise jurisdiction over a declaratory

action that they would otherwise be empowered to hear.").  The Second Circuit instructs district

courts to consider certain prudential factors in determining whether to exercise their discretion to

consider a declaratory judgment action:

> (1) whether the judgment will serve a useful purpose in clarifying or
> settling the legal issues involved; . . . (2) whether a judgment would
> finalize the controversy and offer relief from uncertainty[;] . . . (3)
> whether the proposed remedy is being used merely for procedural
> fencing or a race to res judicata; (4) whether the use of
> a declaratory judgment would increase friction between sovereign
> legal systems or improperly encroach on the domain of a state or
> foreign court; and (5) whether there is a better or more effective
> remedy.

*New York v. Solvent Chem. Co., Inc.*, 664 F.3d 22, 26 (2d Cir. 2011) (quoting *Dow Jones & Co.,*

*Inc.*, 346 F.3d at 359–60) (alterations in original).

### b.  Rath's objections to the R&R

Rath objects to Judge Reyes' recommendation that the Court grant Plaintiff's motion for

summary judgment on the grounds of late notice and prejudice.  (Rath Obj. 1.)  Rath argues that

there remains a material dispute of fact as to whether the notice was timely because ITG may not

have received "actual notice" of the Rath Action.  Consequently, Rath argues that Plaintiff may

have been notified "as soon as reasonably possible" once ITG received actual notice.  *(Id.* at 3.)

As to Judge Reyes' finding regarding prejudice, Rath argues that Plaintiff's ability to

investigate the incident would not have been materially different had it been notified by ITG at

the time of service of the summons and the complaint in the Rath Action.  *(Id.* at 6–9.)  In

particular, Rath contests Judge Reyes' reliance and interpretation of the contents of Plaintiff's

ICS Claims Report (the "Report"), commissioned as part of an investigation into the Rath

Action.  (*Id.* at 6–9; Report, annexed as Ex. G to Aff. of Carol Ann Myrtetus in Supp. of Mot. for Summ. J. ("CAM Aff."), Docket Entry No. 30-21.)  Rath argues that the Report is not admissible and also does not support the conclusion that Plaintiff suffered any prejudice by the delay in notification.  (Rath Obj. 6–9.)

### c.  Plaintiff's objections to the R&R

Plaintiff objects to Judge Reyes' recommendations denying summary judgment on the basis of the four coverage limitations enumerated in the Policy.  (Pl. Obj. 2.)  Plaintiff relies almost entirely on its previous filings and directs the Court to "all of the evidence and arguments submitted on the motion for summary judgment for the relief sought on all of these grounds." (*Id.*; *see also id.* ("Rather than repeat the law and the facts detailed in the Report and Recommendation . . . , we refer the Court to same in response to objection filed by counsel for Rath.").)  The only specific "basis for the objection" is that the coverage limitations applied because "Rath himself admitted . . . [that he] was working as an independent contractor . . . for the benefit of Bellmarc, . . .  and ITG, . . . and that the accident was caused by the condition of the premises as a result of construction work."  (*Id.*)  Based on these "admissions" by Rath, Plaintiff argues that Judge Reyes erred in finding material disputes of facts as to whether any of the coverage limitations applied.  (*Id.*)

### d.  Rath's arguments are meritless

#### i.  ITG did not provide Plaintiff notice within a reasonable time

Rath acknowledges that he properly served ITG with the summons and the complaint in the Rath Action.[5]  (Def. Rath Opp'n to Pl. Mot. ("Rath Opp'n"), Docket Entry No. 32; Def. Rath

---

[5]  The Court assumes for purposes of the analysis of this motion that ITG's obligation to provide reasonable notice began after it was properly served.  However, there appears to be some question as to whether ITG's "clock" to provide notice to Plaintiff should have started when Rath

Mem. in Supp. of Rath Opp'n ("Rath Mem.") 5, Docket Entry No. 32-3).) He further did not

dispute that ITG failed to provide notice to Plaintiff until March 11, 2014, more than three years

after the accident and two years after Rath served ITG with the Rath Action. (Rath 56.1 ¶ 24);

*see also Litchhult v. USTRIVE2, Inc.*, No. 10-CV-3311, 2013 WL 3491076, at *2 (E.D.N.Y. July

10, 2013) (explaining that statements of lack of knowledge serve as admissions under Local Rule

56.1); *Aztar Corp. v. NY Entm't, LLC*, 15 F. Supp. 2d 252, 254 n.1 (E.D.N.Y. 1998)

("Defendants' 56.1 Statement is replete with responses of lack knowledge or information

sufficient to either admit or deny . . . Under Local Rule 56.1, [a]ll material facts set forth in the

statement required to be served by the moving party will be deemed to be admitted unless

controverted by the statement required to be served by the opposing party." (internal quotation

marks and citation omitted)), *aff'd sub nom. Collins v. Aztar Corp.*, 210 F.3d 354 (2d Cir. 2000).

Although these facts are undisputed, Rath argues that the delay may have been reasonable

because ITG did not have *actual* notice of the claim. (Rath Mem. 5.) In support, Rath avers that

another copy of the summons and complaint mailed to ITG at the same address that was served

by the Secretary of the State in July of 2012, was returned by the United States Postal Service as

undeliverable. (*Id.*)

Under New York Insurance law,

> [a] provision that failure to give any notice required to be given by
> such policy within the time prescribed therein shall not invalidate
> any claim made by the insured, an injured person or any other
> claimant if it shall be shown not to have been reasonably possible to
> give such notice within the prescribed time and that notice was given
> soon as was reasonably possible thereafter.

N.Y. Ins. Law § 3420(a)(4). "There is no inflexible test of what constitutes reasonable notice,

---

was injured. (*See* Pl. Mem. 2 ("[Plaintiff] was not given notice of the Rath Action until March
11, 2014, more than three years after the alleged incident, and more than two years after ITG was
served.").)

but the burden is on the insured to demonstrate that any delay was reasonable under the circumstances." *United Nat. Ins. Co. v. 515 Ocean Ave., LLC*, 477 F. App'x 840, 843 (2d Cir. 2012) (citing *Sec. Mut. Ins. Co. of New York v. Acker-Fitzsimons Corp.*, 31 N.Y.2d 436, 441 (1972)); *Argo Corp. v. Greater New York Mut. Ins. Co.*, 4 N.Y.3d 332, 340 (2005) ("The burden of establishing that the delay was not unreasonable falls on the insured."); *U.S. Underwriters Ins. Co. v. Allstate Ins. Co. v. Allstate Ins. Co.*, No. 10-CV-2353, 2013 WL 3148636, at *10 (E.D.N.Y. June 19, 2013) (explaining N.Y. Ins. Law § 3420(a)(4) requires injured party to show that "'notice was given as soon as was reasonably possible' after the prescribed time"). "In the absence of an excuse, such as a genuine lack of knowledge that an incident or accident has occurred, New York courts interpret late-notice provisions rather stringently, and have found relatively short periods [of delay] to be unreasonable as a matter of law." *United Nat. Ins.*, 477 F. App'x at 843 (quoting *Travelers Ins. Co. v. Volmar Const. Co.*, 752 N.Y.S.2d 286, 288 (App. Div. 2002)) (citations and internal quotation marks omitted). In assessing the reasonableness of the delay, courts take into consideration the due diligence of the insured. *See id.* at 844 ("[I]t may be relevant on the issue of reasonableness, whether and to what extent, the insured has inquired into the circumstance of the accident or occurrence." (citations omitted)); *see also Christiania Gen. Ins. Corp. of New York v. Great Am. Ins. Co.*, 979 F.2d 268, 275–76 (2d Cir. 1992) ("[T]he duty to provide notice . . . begin[s] . . . when an insured complying with its duty to use due diligence in investigating potential claims against it would believe from the information available that its policy would be involved.").

Rath's arguments that the delay of notification was reasonable are meritless. As an initial matter, Rath provides no legal support that an insured must have had actual notice in order for its notice obligations to its insurer to attach. (*See* Rath Mem. 5–8; Rath Obj. 3–5.) The Policy itself

also does not require actual notice.  Instead, the Policy merely states that "no claim made by the insured, injured person or other claimant will be invalidated if it shall be shown not to have been *reasonably possible* to give such timely notice and that notice was given as soon as was reasonably possible thereafter."[6]  (Policy 50, annexed as Ex. A to Cam Aff , Docket Entry No. 30-15 (emphasis added)); *see also Grumman Allied Indus., Inc. v. Rohr Indus., Inc.*, 748 F.2d 729, 734 (2d Cir. 1984) ("Particularly where the two sides are sophisticated, their allocation of risk and potential benefit is properly treated as supreme to any conflicting understanding [courts] may have.").  Furthermore, ITG's alleged lack of actual notice is attributable to it alone.  There is no dispute that Rath properly served ITG through the Secretary of State on November 4, 2011.  (*See* Rath 56.1 ¶ 24.)  ITG cannot argue that it was not "reasonably possible" to give notice to Plaintiff because of its own failure to either update its address on record with the Secretary of State or check its mail.  *See Briggs Ave. LLC v. Ins. Corp. of Hannover*, 11 N.Y.3d 377, 381 (2008) (finding notice to insurer, nine months after default action against insured began, to not be "as soon as practicable" where insured argued that it did not know of the existence of the lawsuit because it failed to update the address listed with the Secretary of State); *Trustees of the Local 531 Pension Fund v. American Industrial Gases, Inc.* 708 F. Supp. 2d 272, 276 (E.D.N.Y. 2010) (finding that under New York law, "lack of actual notice . . . does not change the fact that process was proper and complete").  Nor can Rath make such an argument on behalf of ITG.  Such a

---

[6]  It also bears noting that, ITG and Plaintiff are sophisticated parties.  Had they wished to require *actual* notice for notice obligations to attach, ITG and Plaintiff could have certainly included such language in the Policy.  *See MBIA Ins. Corp. v. Countrywide Home Loans, Inc.*, 963 N.Y.S.2d 21, 23 (App. Div. 2013) (declining to add a requirement to a contract "under the guise of interpreting the writing"); *DynCorp v. GTE Corp.*, 215 F. Supp. 2d 308, 322 (S.D.N.Y. 2002) ("It is not the role of the courts to relieve sophisticated parties from detailed, bargained-for contractual provisions that allocate risks between them, and to provide extra-contractual rights or obligations for one side or the other." (citations omitted)).

reading of the Policy would obviate one of the core purposes of insurance notice provisions — "the importance to the insurer of prompt notice for investigation while the events are fresh and to ascertain whether a defense exits."[7] *Jenkins v. Burgos*, 472 N.Y.S.2d 373, 377 (App. Div. 1984). ITG cannot be rewarded with continuing coverage for its own lack of due diligence. *See 1329 Realty LLC v. U.S. Liab. Ins. Grp.*, No. 05-CV-3363, 2006 WL 3150823, at *4 (E.D.N.Y. Nov. 3, 2006) (finding insured's notice to insurer, three months after being served, to be unreasonable despite insured's argument that it lacked actual notice).[8]

Even assuming actual notice to an insured is required, Rath fails to provide any admissible evidence to support his argument that ITG did not receive the summons and complaint to the Rath Action on November 4, 2011, when it was served on the New York Secretary of State. Rath has only submitted evidence of the return of a copy of the summons and complaint in the Rath Action that was mailed to ITG on July 27, 2012 — *eight months* after the original service on ITG. (Letter dated July 27, 2012, annexed as Ex. B to Rath Opp'n, Docket Entry No. 32-2.) The return of the July 27, 2012 correspondence does not provide more than a

---

[7] Indeed, New York courts have consistently held that insurers are to be notified even where they have actual notice of the occurrence giving rise to lawsuits. *See, e.g., JT Magen v. Hartford Fire Ins. Co.*, 879 N.Y.S.2d 100, 106 (App. Div. 2009) ("This Court's decisions have made clear that notice received from a third party does not fulfill the insurance policy's notice requirement and thus does not implicate the insurer's obligation to issue a timely disclaimer.") (collecting cases).

[8] The Court cites to *Briggs Ave. LLC v. Ins. Corp. of Hannover*, 11 N.Y.3d 377 (2008), and *1329 Realty LLC v. U.S. Liab. Ins. Grp.*, No. 05-CV-3363, 2006 WL 3150823 (E.D.N.Y. Nov. 3, 2006), in addressing the issue of delay, both of which were decided before the 2008 amendments to the New York Insurance Code § 3420 took effect. The 2008 amendment now requires the insurer to demonstrate both unreasonable delay *and* prejudice to the insurer if the insured provided notice within two years of the time required by the policy. *See Ponok Realty Corp. v. United Nat. Specialty Ins. Co.*, 893 N.Y.S.2d 125, 127 (App. Div. 2010). However, the additional requirement to demonstrate prejudice does not appear to have impacted the case law on what constitutes unreasonable delay.

scintilla of evidence to suggest that ITG did not receive the summons and complaint on

November 4, 2011. "[M]ere speculation and conjecture is insufficient to preclude the granting of

[a] motion [for summary judgment]."[9] *Guilbert v. Gardner*, 480 F.3d 140, 145 (2d Cir. 2007)

(citation omitted).

### ii. Rath fails to rebut the presumption of prejudice

Plaintiff argues that the delay prejudiced its ability to "investigate Rath's claims and

effectively defend ITG." (Pl. Mem. 5.) Relying in large part on the Report annexed to the

affidavit of Carol Ann Myrtetus ("Myrtetus"), Plaintiff's claims representative for the Rath

Action, Plaintiff asserts that its investigators were "unable to acquire leases, construction

contracts, and other relevant information because ITG no longer had any of th[o]se documents in

its possession." (*Id.* at 7.) Plaintiff argues that it has been unable to locate the contractor

working at the Premises at the time, and other potentially relevant parties. (*Id.* at 7–8.) Nor was

Plaintiff able to inspect the premises around the time of Rath's fall and injury. (*Id.*)

Rath contends that Plaintiff was not prejudiced by any delay in receiving notice, "as it

was in no worse position than it would have been, had it received notice shortly after the service

of the summons in the Rath [A]ction" on ITG. (Rath Mem. 5.) According to Rath, ITG sold the

Premises on June 21, 2011, preventing Plaintiff from being able to conduct an investigation

around the time of the accident. (*Id.* at 6.) Rath also argues that the Report and the statements

therein are inadmissible hearsay, (Rath 56.1 ¶¶ 8, 28–9, 39; Rath Obj. 6), and refutes Plaintiff's

---

[9] The Court also notes that Rath had an opportunity under New York law to notify Plaintiff directly of his potential claims against ITG. *See* N.Y. Ins. Law § 3420(a)(4); *Romano v. St. Paul Fire & Marine Ins. Co.*, 410 N.Y.S.2d 942, 945–46 (App. Div. 1978) ("While an injured party is not held to as high a standard of diligence as that required of an insured, some effort to determine the existence of coverage is required."). In addition, the Court notes that ITG has failed to appear in this action despite being aware of the Rath Action. (*See* Report, annexed as Ex. G to Pl. Mem., Docket Entry No. 24-23.)

description of the Report's contents, (Rath Mem. 6–7; Rath Obj. 7).

### 1. The Report and the investigator's statements are admissible under FRE 803(6)

Because of the importance the parties have placed on the Report and the statements therein, the Court first determines their admissibility.

Under Rule 803(6) of the Federal Rules of Civil Procedure, business records may be admitted as an exception to hearsay if:

> (A) the record was made at or near the time by — or from information transmitted by — someone with knowledge;
>
> (B) the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit;
>
> (C) making the record was a regular practice of that activity;
>
> (D) all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification; and
>
> (E) the opponent does not show that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness.

Fed. R. Evid. 803. "The purpose of the rule is to ensure that documents were not created for 'personal purpose[s] . . . or in anticipation of any litigation' so that the creator of the document 'had no motive to falsify the record in question.'" *United States v. Kaiser*, 609 F.3d 556, 574 (2d Cir. 2010) (quoting *United States v. Freidin,* 849 F.2d 716, 719 (2d Cir. 1988)). Nevertheless, the Second Circuit has also noted that Rule 803(6) "favors the admission of evidence rather than its exclusion if it has any probative value at all." *Id.* (citations and internal quotation marks omitted). Courts, however, distinguish between statements in the report made by those with a "business duty" to report and those who do not. *See Abascal v. Fleckenstein*, 820 F.3d 561, 566 (2d Cir. 2016) ("A duty to report, furthermore, 'has long been recognized as the principal means

of establishing the reliability of a hearsay statement' offered under the Business Records Exception." (quoting *United States v. Reyes*, 157 F.3d 949, 952 (2d Cir. 1998)). "[S]tatements of witnesses or complaints within [the] reports . . . are hearsay unless they fit into an independent exception to the hearsay rule." *Al–Mohammedi v. City of Buffalo*, No. 13-CV-1020, 2016 WL 1748264, at *3 (W.D.N.Y. Mar. 29, 2016) (citing *Parsons v. Honeywell, Inc.,* 929 F.2d 901, 908 (2d Cir. 1991)), *report and recommendation adopted sub nom. Al-Mohammedi v. City of Buffalo*, No. 13-CV-01020, 2017 WL 163388 (W.D.N.Y. Jan. 17, 2017).

The Report satisfies the requirements of Rule 803(6) and is admissible as a business record. Myrtetus, Plaintiff's claims representative for the Rath Action, swore by affidavit that the Report was "created and/or maintained by [Plainitff] as part of its business and [is] maintained for business purposes." (Myrtetus Aff. ¶ 4.) As an insurance company, it is no surprise that Plaintiff creates investigative reports of potential claims as a regular part of its business. *See Rizkallah v. Forward Air, Inc.*, No. 02-CV-2448, 2009 WL 3029309, at *2 (S.D.N.Y. Sept. 22, 2009) (explaining "insurance carriers' investigative reports may sometimes fall under the business record exception to the hearsay rule"); *Fine v. Bellefonte Underwriters Ins. Co.*, 91 F.R.D. 420, 422 (S.D.N.Y. 1981) ("The investigation and evaluation of claims is part of the regular, ordinary and principal business of insurance companies."); *see also United States v. Bortnovsky,* 879 F.2d 30, 34 (2d Cir. 1989) (an "adjuster's report might otherwise qualify as a business record" but for the fact that it contained hearsay statements made by a person who had no duty to report information). The Report, an amalgamation of at least two separate reports dated September 11, 2014 and October 3, 2014 respectively, also appears to have been created contemporaneous with its purpose — investigation of the underlying claim in the Rath Action.

While there is some concern that any insurance report, by its very nature, may be in

anticipation of litigation, the information contained in the Report appears to document attempts to gather information in the ordinary course of evaluating a claim. *Fine*, 91 F.R.D. at 420 (explaining that in the case of work-product doctrine that "[a]t a certain point an insurance company's activity shifts from the ordinary course of business to anticipation of litigation"). Rath also has not challenged the accuracy of the statements in the Report. Rather, Rath only disputes the Report's admissibility generally, and also disputes Plaintiff's recitation of the findings of the investigation. *See United States v. Bonomolo*, 566 F. App'x 71, 73 (2d Cir. 2014) ("The 'principal precondition to admission of documents as business records . . . is that the records have sufficient indicia of trustworthiness to be considered reliable.'" (quoting *Saks Intern., Inc. v. M/V "Export Champion,"* 817 F.2d 1011, 1013 (2d Cir. 1987)). At times, Rath *himself* cited portions of the Report for the truth of the matter asserted rather than for any non-hearsay purposes such as impeachment. (*See* Rath Mem. 3 ("In fact, [the Report] reveals that no construction permits were issued or in effect during that time period"); *id.* at 3–4 ("[P]laintiff's investigator very clearly stated that ITG's principal told him he needed additional time to compile the requested documents. Plaintiff, for an unknown and unexplained reason, failed and refused to pursue this issue with the insured.")); *see also Capobianco v. City of New York*, 422 F.3d 47, 55 (2d Cir. 2005) ("Hence, defendants waived any objections to the admissibility of the reports by offering them themselves."); *Pfizer Inc. v. F & S Alloys & Minerals Corp.*, 856 F. Supp. 808, 812 (S.D.N.Y. 1994) (considering hearsay information where "both parties rel[ied]" on it). Therefore, the Report, except for statements made by witnesses, including Jonah Langer, the principle for ITG, are admissible under the business records exception of Rule 803(6). The investigator's statements are also admissible because he had a duty to report the information provided. *See United States v. Bortnovsky*, 879 F.2d 30, 34 (2d Cir. 1989) (explaining that

statement in insurance adjuster's report may have been admissible as part of business report if the declarant "had a duty to report the information he was quoted as having given"); *see also Reyes*, 157 F.3d at 952 ("The person making the record need not have a duty to report so long as someone has a duty to verify the information reported.").[10]  Statements by Langer, and other witnesses, however, may have to fall within another exception even if they had a contractual duty to report the information.  *Cf. Hochhauser v. Elec. Ins. Co.*, 844 N.Y.S.2d 374, 375 (App. Div. 2007) (holding that statements were inadmissible pursuant to New York's business records exception because "an insured lacks a business duty, as opposed to a contractual duty");[11] *Peak v. Kubota Tractor Corp.*, 559 F. App'x 517, 523 (6th Cir. 2014) (holding statements by technician for company with contractual duty to submit warranty claims were admissible under the business records exception).

## 2. Langer's statements in the Report are admissible under FRE 807

"Rule 807 provides for a limited, residual exception to the rule against hearsay where no other exception applies."  *United States v. Ulbricht*, 858 F.3d 71, 123 (2d Cir. 2017).  A hearsay statement may be admissible under Rule 807 if: "(i) it is particularly trustworthy; (ii) it bears on a material fact; (iii) it is the most probative evidence addressing that fact; (iv) its admission is consistent with the rules of evidence and advances the interests of justice; and (v) its proffer follows adequate notice to the adverse party."  *Id.* (quoting *United States v. Morgan*, 385 F.3d

---

[10]  *United States v. Reyes*, 157 F.3d 949, 952 (2d Cir. 1998), appears to address information that can be or has been independently verified in some manner.  In *Reyes*, the Second Circuit found admissible names provided in a logbook by third-parties with no business duty to report.  *Id.* at 953.  However, the names were admissible because the logbook was "kept under a duty of accuracy, because 'every visitor must produce identification' and 'the officer or employee on duty checks the identification.'"  *Id.*

[11]  New York's business record exception is "comparable" to that provided in Rule 803(6) of the Federal Rules of Evidence.  *Perfetto v. Hoke*, 898 F. Supp. 105, 112 n.3 (E.D.N.Y. 1995).

196, 208 (2d Cir. 2004)). "The 'residual hearsay exception [ ] will be used very rarely, and only

in exceptional circumstances.'" *Id.* (quoting *Parsons v. Honeywell, Inc.*, 929 F.2d 901, 907 (2d

Cir. 1991)) (alterations in original).

Langer's statements in the Report are admissible under Rule 807.  Had ITG appeared in

this action, Langer's statements would have been admissible as opposing party statements

against ITG.[12]  *See* Fed. R. Evid. 801(d)(2)(A); *United States v. Cummings*, 858 F.3d 763, 773

(2d Cir. 2017) ("[A] statement is not hearsay if it is 'offered against an opposing party and . . .

was made by the party in an individual . . . capacity."").  The admission of Langer's statements

thus advances the interest of justice because Rath seeks, in this action, to stand in the shoes of

ITG.  As discussed throughout, Rath argues that *ITG's failure* to provide notice within a

reasonable time did not prejudice Plaintiff.  To allow Rath to make arguments on behalf of ITG

without having to be subject to the same scrutiny would be unjust.  In addition, as discussed

*supra*, Rath himself has endorsed the *accuracy* of Langer's statements as provided in the Report,

indicating their trustworthiness.  (*See, e.g.*, Rath Mem. 3–4, 7–8 (citing portions of the Report,

including statements by Langer, favorable to Rath for the truth of the matter asserted).)  Rath

also has had ample notice as evinced by his objections in the Rule 56.1 statement and objections

to Judge Reyes' R&R.  Furthermore, the Report is the only tangible evidence either party has

relied on to address prejudice arising from the delayed notice, as evidenced by *both* parties'

---

[12]  The statements would also have been admissible as "statements against interest" under Rule 804(b)(3) had Plaintiff provided support that it was unable to procure Langer's attendance or testimony by process or other reasonable means.  *See* Fed. R. Evid. 804(a)(5)(B).  Langer's statements clearly demonstrate the prejudice created by ITG's delayed notice to Plaintiff.  Based on Langer's statements, Plaintiff had clear grounds to disclaim coverage for any liability arising from the Rath Action.  Therefore, the statements would only have been made if Langer believed them to be true because "[they] w[ere] so contrary to [ITG's] proprietary or pecuniary interests." Fed. R. Evid. 804(b)(3).

reliance on its contents.[13]  Under these circumstances, the Court may consider Langer's

statements in evaluating prejudice.

### 3.   The delay in notice prejudiced Plaintiff

Under New York Insurance Law, the burden of proof as to lack of prejudice is placed

upon the "insured, injured person or other claimant . . . if the notice was provided more than two

years after the time required under the policy."  N.Y. Ins. Law § 3420(c)(2)(A)(ii); *Slocum v.

Progressive Nw. Ins. Co.*, 28 N.Y.S.3d 181, 183 (App. Div. 2016) (indicating prejudice is to be

"presumed" for notice after two years), *leave to appeal denied*, 32 N.Y.S.3d 524 (App. Div.

2016).  Because ITG notified Plaintiff about the Rath Action more than two years after being

served, Rath has the burden to demonstrate lack of prejudice.

Rath fails to overcome the presumption of prejudice.[14]  Throughout his opposition brief

and objections to the R&R, Rath selectively cites to portions of the Report to dispute Plaintiff's

claims of prejudice.  Page fourteen of the Report, however, clearly indicates that ITG "no longer

had [any] records [of the incident] and could not provide [Plaintiff] with any type of lease

agreement, occurrence report, contact or any other pertinent information regarding the loss

---

[13]  As discussed *supra*, Rath cited to the Report not only to dispute the contents as
described by Plaintiff but also as *support* for his arguments.  Rath cannot have it both ways.  He
may not pick and choose favorable portions of the Record to admit as evidence while
disclaiming unfavorable parts as inadmissible (at least solely based on whether the portions are
helpful to his argument or not).  Rath's opposition brief mixes throughout both permissible non-
hearsay and impermissible hearsay uses of the Report.  (*See generally* Rath Mem.)

[14]  There does not appear to be much case law indicating how an insured or injured party
may demonstrate lack of prejudice.  The Court notes the difficulty in proving a negative.  *See
AJF Transportation Consultants, Inc. v. C.I.R.*, 213 F.3d 625 (2d Cir. 2000) (describing
"difficulty of proving a negative" in finding Government did not have to establish that a
taxpayer's claimed deductions did not exist).  However, in this action, Plaintiff has offered
specific evidence of prejudice in addition to the presumption of prejudice.

occurrence of October 7, 2010." (Report 14.) In addition, Langer "advised he could not provide [Plaintiff] with any lease agreements or any documentation pertinent to [Plaintiff's] investigation of this loss, due to the age of the claim." (*Id.*) Rath provides no evidence to support the clear evidence of prejudice described in the Report. Instead, Rath consistently cites only to pages three through six of the fifteen-page report.[15] In his Objections, Rath went so far as to argue that Judge Reyes mischaracterized Langer's statements by citing to statements on pages three through six, despite the clear indication that the R&R was citing to page fourteen. (*See* Rath Obj. 7).) These tactics only serve to illustrate the weakness of Rath's arguments.[16] Accordingly, Rath has failed to meet his burden to demonstrate lack of prejudice to Plaintiff.

### e. Plaintiff's objections to the R&R fail under the clear error standard

Plaintiff's objections are too conclusory and general to warrant *de novo* review. Fed. R. Civ. P. 72(b)(2) ("[A] party may serve and file *specific*, written objections to the proposed findings and recommendations." (emphasis added)); *Mario*, 313 F.3d at 766 ("Merely referring the court to previously filed papers or arguments does not constitute an adequate objection."); *Rothenberger v. New York City Police Dep't*, No. 06-CV-868, 2008 WL 2435563, at *1 (E.D.N.Y. June 16, 2008) (finding objections to be "entirely conclusory" where plaintiff "referenc[ed] only certain exhibits and facts that [p]laintiff believe[d] [the magistrate judge] should have considered and relied upon"). Other than incorporation by reference of prior filings,

---

[15] The earlier pages (1–6) also describe events that preceded those detailed in the latter pages (13–15).

[16] Rath's other arguments do not rebut the evidence provided in the Report. As Judge Reyes aptly explained, ("[Plaintiff's] inability to photograph the Premises . . . was not the only prejudice it suffered." (R&R 7.) In addition, even if Rath and Plaintiff have agreed to vacate the default judgment as to ITG, "while that might cure some of the prejudice that Plaintiff has suffered, it does not provide Plaintiff the opportunity to go back in time and obtain any of the necessary documentation required to defend the case." (*Id.* at 8.)

Plaintiff offers one sentence of facts that it believes the Court should consider in reviewing Judge Reyes' recommendations.  (*See* Pl. Obj. 2 ("Rath himself admitted . . . [that he] was working as an independent contractor . . . for the benefit of Bellmarc, . . . , and ITG, . . . and that the accident was caused by the condition of the premises as a result of construction work.").)  Plaintiff provides no reasoning — legal or otherwise — to support its argument that Judge Reyes erred in any respect.  *See Rothenberger*, 2008 WL 2435563, at *1 (applying clear error standard where plaintiff submitted seven-paragraph letter providing "little more than a list of documents and facts that he believe[d] the court should have considered in arriving at its findings"); *Hall v. Phillips*, No. 04-CV-1514, 2007 WL 2156656, at *1 (E.D.N.Y. July 25, 2007) (finding petitioner's "two-sentence objection" devoid of any reference to "any specific part of the R&R and . . . legal argument" to trigger clear error review).  Indeed, Plaintiff fails to even explain whether Judge Reyes made contrary findings with respect to any or all of the facts in the lone sentence it provides.[17]  Nor does Plaintiff explain which facts are relevant to which of the coverage limitations.  *See DuBois v. Macy's Retail Holdings, Inc.*, No. 11-CV-4904, 2012 WL 4060586, at *1 (E.D.N.Y. Sept. 13, 2012) ("A proper objection is one that identifies the specific portions of the report and recommendation that the objector asserts are erroneous and provides a basis for this assertion."), *aff'd*, 533 F. App'x 40 (2d Cir. 2013); *Scipio v. Keane*, No. 95-CV-2732, 1997 WL 375601, at *1 (S.D.N.Y. July 7, 1997) (when objections fail to address analysis directly, court reviews report-recommendation for clear error).  Because Plaintiff has offered only vague, conclusory objections, the Court applies the clear error standard in reviewing Judge Reyes' recommendations as to the policy limitations.  *See also Bowens v. Atl. Maint. Corp.*, 546

---

[17]  Judge Reyes, in fact, agreed that Rath had worked as an independent contractor for Bellmarc.  (*See* R&R 10.)

F. Supp. 2d 55, 59 (E.D.N.Y. 2008) ("To allow a party to trigger full de novo review by the district judge on the basis of the type of objections made here would make a mockery of the role of magistrate judges in fulfilling their important and well-recognized responsibilities.").

Having reviewed the R&R as to the policy limitations for clear error, and finding none, the Court adopts Judge Reyes' findings and conclusions as to those issues.[18]

### III. Conclusion

For the foregoing reasons, the Court adopts Judge Reyes' R&R in its entirety pursuant to 28 U.S.C. § 636(b)(1), and grants Plaintiff's motion for summary judgment.


SO ORDERED:


_____s/ MKB_____
MARGO K. BRODIE
United States District Judge

Dated: March 28, 2018
      Brooklyn, New York

---

[18] In finding a genuine dispute of fact as to the applicability of the Vacancy of the Premises limitation, Judge Reyes questioned the admissibility of various exhibits attached to the Report in support of Plaintiff's argument. (R&R 9.) However, Judge Reyes found Plaintiff's argument lacking even after taking into consideration the exhibits offered in support. (*Id.*)